IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ERIC HENDRICKS,                          )
                                         )
            Plaintiff,                   )
                                         )
      v.                                 )
                                         )     No. 11 C 2783
THE CBE GROUP, INC.,                     )
                                         )
            Defendant.                   )
                                         )
                                         )

## MEMORANDUM OPINION AND ORDER

Eric Hendricks has sued The CBE Group, Inc. ("CBE") asserting claims pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA").  Specifically, plaintiff claims that defendant violated various sections of the FDCPA when a CBE representative threatened him over the phone and when CBE called repeatedly over a period of two months.  Now before me is defendant's motion for summary judgment on all of plaintiff's claims, which I grant in part.


I.

The following facts are not in dispute.  In 2007 or 2008, plaintiff Hendricks had a billing dispute with Verizon and stopped paying the bill for his cellular phone service.  Verizon attempted to collect on the unpaid account, but eventually turned over the debt to a series of collection agencies.  In the fall of

2010, CBE obtained the account and began attempting to collect the debt from Hendricks. CBE tried to contact Hendricks at his old Verizon number starting on September 3, 2010, but the number had been disconnected in April of 2007 or 2008. On October 15, 2010, CBE determined that the number was no longer valid. CBE then ran an internal process to identify a valid phone number and on October 19, 2010, began calling Hendricks at a different, valid number.

On October 19, 2010, CBE called Hendricks, but no one answered the call. Within minutes, Hendricks returned the call at the number listed on his caller ID. Carrie Prugh, a CBE representative, answered the phone call from Hendricks. Prugh verified Hendrick's name and contact information, and identified herself as a CBE representative who had called regarding his Verizon account. Hendricks told Prugh that Verizon had overcharged him and complained that Verizon had been "pretty rude" about trying to collect the unpaid bills. (Def.'s Rule 56.1 Statement of Facts, ¶¶ 24-25) (DN 27). There were apparently no threats made during the phone conversation, as Hendricks remarked to Prugh that she seemed like a "nice person with a sweet voice." (*Id.* at ¶ 23). Prugh offered to settle the amount with Hendricks, and Hendricks indicated that he would accept, saying that he would call back by October 29, 2010, the day Prugh said the offer would expire. But Hendricks never

called back, and, in fact, Hendricks never spoke to another CBE representative after the conversation with Prugh on October 19.

CBE, however, continued to try to contact Hendricks until December 10, 2010. On December 3, 2010, someone answered a call from a CBE representative but immediately hung up when the representative identified herself and asked to speak with Hendricks. The frequency of the calls are in dispute. CBE contends its records show that it called Hendricks 28 times between October 19 and December 10. Plaintiff says he received approximately 159 calls during this period. On December 13, 2010, CBE restricted Hendricks' account and no further collection efforts were made.

## II.

Summary judgment will be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating whether there is a genuine issue of material fact, courts look to evidence cited in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." *Id.* The party seeking summary judgment has the initial burden of demonstrating

that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If it does so, to survive a motion for summary judgment, the non-moving party must come forward with specific facts establishing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). On summary judgment "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, (2007). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* (internal quotation marks and citation omitted). The existence of "a mere scintilla of evidence" is insufficient to stave off summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The FDCPA "is designed to protect consumers from the unscrupulous antics of debt collectors, irrespective of whether a valid debt actually exists." *Keele v. Wexler*, 149 F.3d 589, 593 (7th Cir. 1998). Among other things, the FDCPA prohibits debt collectors from representing or implying "that nonpayment of any debt will result in ... the seizure ... of any property or wages ... unless such action is lawful and the debt collector or

creditor intends to take such action" (§ 1692e(4)); threatening
"to take any action that cannot legally be taken or that is not
intended to be taken" (§ 1692e(5)); engaging in "conduct the
natural consequence of which is to harass, oppress, or abuse any
person in connection with the collection of a debt" (§ 1692d); or
"[c]ausing the telephone to ring ... repeatedly or continuously
with intent to annoy, abuse, or harass." (§ 1692d(5)).

    Plaintiff makes essentially two claims in his complaint.
First, he alleges that in September 2010 or early October 2010, a
CBE employee made threats over the phone in violation of
§§ 1692e(4) and 1692e(5).  These threats allegedly included a
representation that CBE would take Hendricks's tax return if he
refused to pay the debt.  Second, Hendricks alleges that CBE
called him so frequently as to violate §§ 1692d and 1692d(5).  In
its motion for summary judgment, defendant argues that Hendricks
has not come forward with any evidence of a threatening phone
call, even making admissions to the contrary, and that CBE's call
pattern and volume, along with its policies and procedures, do
not evidence an intent to harass.


A.  Claims under FDCPA §§ 1692e(4) and 1692e(5)

    The dispute over plaintiff's first claim, that a CBE
representative threatened him in September 2010 or early October
2010, revolves around whether CBE contacted Hendricks at a valid

phone number before the October 19 conversation with Prugh. CBE maintains that none of its representatives spoke with Hendricks, let alone threatened him, prior to the October 19 conversation, and CBE has submitted internal call logs corroborating this claim. CBE argues that Hendricks's own self-serving testimony to the contrary is not sufficient to survive summary judgment. As the Seventh Circuit has held, "uncorroborated, self-serving testimony, if based on personal knowledge or firsthand experience, may prevent summary judgment against the non-moving party, as such testimony can be evidence of disputed material facts." *Marr v. Bank of America, N.A.*, 662 F.3d 963, 968 (7th Cir. 2011) (quoting *Montgomery v. American Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010)). Here, Hendricks has submitted his deposition testimony, in which he describes in some detail the allegedly threatening phone call.[1] But the testimony conflicts with certain admissions plaintiff has made.

As CBE points out in its reply brief, Hendricks has made several admissions that are fatal to his claim that a CBE employee threatened him in violation of §§ 1692e(4) and 1682e(5) in September or early October of 2010. Specifically, Hendricks admits in his response to defendant's Rule 56.1 Statement of Facts that (1) CBE tried to reach him only at an invalid number

---

[1] Hendricks has also submitted his affidavit. I have considered the affidavit to the extent that it is consistent with Hendricks's deposition testimony.

from September 3, 2010 to October 15, 2010; (2) the first call CBE placed to a valid number was on October 19, 2010; (3) CBE attempted to contact Hendricks at a valid number for a two-month period beginning on October 19, 2010; and (4) other than the October 19, 2010, conversation, Hendricks never had another conversation with CBE. (Pl.'s Response to Def.'s Rule 56.1 Statement of Facts, ¶¶ 9-13, 37) (DN 38). In contrast, plaintiff also disputes that "CBE did not call [the valid phone number] prior to October 19, 2010." (*Id.* at ¶ 46). In disputing this single statement, plaintiff cannot undo the fact that he has admitted to a number of clear and detailed statements of fact.

The inconsistency merely reflects Hendricks's own conflicted testimony on the issue of the allegedly threatening phone call. For example, according to his deposition testimony, Hendricks returned Prugh's phone call on October 19 because he didn't recognize the phone number on his caller ID. (Pl.'s Ex. 1, Deposition of Eric Hendricks, pp. 27-28) (DN 36-2). Hendricks also stated that when Prugh called him, CBE was a new collection agency calling him and that he would have recognized the phone numbers of the other collection agencies that had contacted him. (*Id.*). These statements are consistent with his admission that CBE did not begin calling him at a valid number until October 19. Yet Hendricks also testified that he when he answered the allegedly threatening phone call from a CBE representative in

September or early October, he recognized the phone number of the caller. (*Id.* at 32). This is consistent with Hendricks's claim that CBE called him prior to October 19, but inconsistent with his testimony about the call from Prugh and with his admissions.

In other words, Hendricks has admitted that CBE did not place any call to a valid number, let alone threaten him, in September or early October. The Seventh Circuit has held that "[a]n admission trumps evidence, rather than vice versa." *Tobey v. Extel/JWP, Inc.*, 985 F.2d 330, 333 (7th Cir. 1993); *see also Holmes v. Village of Hoffman Estates*, 511 F.3d 673, 680-81 (7th Cir. 2007) (finding no factual dispute where a party admitted a fact in responding to the opposing party's statement of facts). Hendricks cannot now create a factual dispute after admitting that certain key facts are undisputed.

B. Claim under § 1692d(5)[2]

Whether Hendricks has a viable claim under § 1692d(5) is a closer call. Hendricks claims that CBE called him around three

---

[2] Hendricks purports to bring a claim under § 1692d, which generally prohibits debt collectors from engaging in "any conduct the natural consequence of which is to harass, oppress, or abuse." But 1692d(5), which prohibits "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass," governs the type of conduct alleged here, namely "continuous and repeated collection calls." (Pl.'s Response in Opposition to Def.'s Motion for Summary Judgment, p. 6) (DN 36). Because Hendricks has not alleged any other conduct under § 1692d, I will only analyze his claim under § 1692d(5).

times a day, seven days a week, for a total of about 159 calls over a two-month period, from October 19, 2010 to December 10, 2010.[3]  (Pl.'s Rule 56.1 Statement of Facts, ¶ 16) (DN 37). Whether "repeated phone calls were made 'with intent to annoy, abuse, or harass,'" depends on the volume and pattern of calls. *Majeski v. I.C. System, Inc.*, 08 CV 5583, 2010 WL 145861, *3 (N.D. Ill. Jan. 8, 2010) (Coar, J.) (quoting § 1692d(5)); *see also Chavious v. CBE Group, Inc.*, 2012 WL 113509, *2 (E.D. N.Y. Jan 13, 2012) (Seybert , J.); *Pratt v. CMRE Financial Services, Inc.*, No. 4:10-CV-2332 (CEJ), 2012 WL 86957, *3 (E.D. Mo. Jan. 11, 2012) (Jackson, J.).  Courts have generally considered two types of evidence of an intent to harass.  First, where a plaintiff has shown that he asked the collection agency to stop calling or has informed the collection agency that it has the wrong number, and the collection agency nevertheless continued to call the plaintiff, courts have found intent. *Pratt*, 2012 WL 86957, at *3 (citing *Moore v. Firstsource Advantage, LLC*, No. 07-CV-770, 2011 WL 4345703, *14 (W.D. N.Y. Sept. 15, 2011) (Skretny, C.J.); *Kerwin v. Remittance Assistance Corp.*, 559 F.Supp.2d 1117, 1124 (D. Nev. 2008)).  Second, the volume and pattern of the

---

[3]  Hendricks actually claims that CBE called him around 200 times from September 2010 or early October 2010 until December 2010 or January 2011, but as discussed above, plaintiff has admitted that he did not receive any phone calls from CBE until October 19.  Further, Hendricks has also admitted that CBE ceased calling him on December 10.  (Pl.'s Response to Def.'s Rule 56.1 Statement of Facts, ¶ 45) (DN 38).

calls may themselves evidence an intent to harass. *Bassett v. I.C. System, Inc.*, 715 F.Supp.2d 803, 810 (N.D. Ill. 2010) (thirty-one calls over a twelve-day period is sufficient to raise an issue for trial). Whether or not the volume and pattern of calls is indicative of an intent to harass is often a question for the jury. *Majesky*, 2010 WL 145861, at *3.

The first scenario does not apply here because it is undisputed that Hendricks did not tell Prugh not to call, and in fact suggested to Prugh that he would call CBE in ten days. Further, as I concluded above, Hendricks has admitted that his conversation with Prugh was the only conversation he had with a CBE representative. Hendricks has therefore not established an intent to harass by showing that he asked CBE not to call him. As to the second method of showing intent, Hendricks has testified that for two months, CBE called him around three times a day, often seven days a week. Hendricks has also submitted his declaration, in which he states that CBE called him very early in the morning, late at night or in the middle of the night, and that CBE sometimes placed calls in quick succession.[4] (Pl.'s Ex. 2, Declaration of Eric Hendricks, ¶ 9) (DN 36-3). Plaintiff was

---

[4] Defendant argues that plaintiff's admision that "CBE never called, hung up and immediately called back" (Pl.'s Response to Def.'s Rule 56.1 Statement of Facts, ¶ 40) (DN 38), contradicts the statement in Hendricks' declaration. A plain reading of the two statements, though, shows that they are not in conflict.

unable to obtain his phone records from his cellular service
provider (Pl.'s Ex. 3, Declaration of Matthew Slodowy) (DN 36-4),
and has not submitted any other records of the calls he received
from CBE.  Still, his testimony and declaration, based on
firsthand experience and knowledge, are evidence of disputed
facts.  *Marr*, 662 F.3d at 968 (citation omitted).  And while it
is true that Hendricks is unable to recall the dates and times of
the specific phone calls, this does not preclude a finding of
liability under § 1692d(5), though it may be relevant to
credibility, which is not a factor that I can consider at the
summary judgment stage.  *Pratt*, 2012 WL 86957, at *4 (denying
summary judgment where the defendant's call logs showed only
twenty-five calls and the plaintiff, who kept no records of calls
received, testified that he received between sixty-five to
seventy calls).

CBE argues that Hendricks cannot create a dispute of
material fact by relying on his testimony and declaration,
because these differ from his answer to an interrogatory.
Plaintiff stated in his answer to defendant's interrogatories
that plaintiff recalled receiving "a few calls per week" from
CBE.  (Def.'s Ex. C, Pl.'s Response to Def.'s Interrogatorries,
¶ 6) (DN 27-5).  There are two problems with defendant's
argument.  First, the response to the interrogatory was not
verified, nor did Hendricks sign it.  It is therefore unclear

11

whether the answers were based directly on Hendricks's personal knowledge. Second, "few" is a vague term that is of little help in determining whether the frequency of calls claimed by Hendricks matches that claimed by CBE. The answer to the interrogatory may, if admissible, be relevant to plaintiff's credibility at trial, but on summary judgment I find that plaintiff has submitted his deposition testimony, which clearly, and with some precision, disputes CBE's contention that it called him twenty-eight times. Based on the record, I cannot conclude that no reasonable juror could find that CBE placed calls to Hendricks with an intent to annoy, abuse, or harass.

### III.

For the foregoing reasons, defendant's motion for summary judgment is granted in part. Plaintiff's claims under §§ 1692e(4) and 1692e(5) are dismissed.

**ENTER ORDER:**

_Elaine E. Bucklo_
**Elaine E. Bucklo**
United States District Judge

Dated: April 10, 2012